PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM E. MARTIN, | ) | |
| | ) | CASE NO. 4:16CV01074 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| SINCLAIR COMMUNITY COLLEGE, *et al.*, | ) ) ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF No. 1] |

*Pro se* Plaintiff William E. Martin filed this action under 42 U.S.C. § 1983 against the Sinclair Community College ("SCC"); the Allen Correctional Institution ("ACI") Regional School Principal, Steven Johnson; Cheryl Taylor; Maryann Schaublin; Marge Jenkins; Sherry Camper; Ohio Department of Rehabilitation and Correction ("ODRC") Director Gary Mohr; Kevin Jones; Cori Smith; Ray Schaublin; Sheila McNamara; Major Mark Bishop; Sergeant Shrider; and Angela Sherman. ECF No. 1. In the Complaint, Plaintiff alleges he was expelled from the SCC program at ACI, and was transferred to another prison as a result of false conduct reports filed against him. He asserts violations of his First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights, and the Americans with Disabilities Act, 42 U.S.C. § 12101. He seeks monetary relief, expungement of his prison disciplinary record, and reinstatement into SCC.

(4:16CV01074)

## I.  Background

Plaintiff contends he was enrolled in the SCC program at ACI, but faced expulsion from the program due to his grades.  ECF No. 1 at PageID #: 65.  He alleges there were three problems with his grades, which if corrected, would possibly allow him to remain in school.  *Id*.  He attempted to file an academic appeal.  *Id*.  Plaintiff claims that Maryann Schaublin initially allowed him to use an SCC computer to type his appeal.  *Id*.  It appears Plaintiff found it difficult to write his appeal by hand due to his double vision and glaucoma.  *See id*.  Plaintiff alleges Sherry Camper interfered with Mary Schaublin's decision, and removed his appeal document from the computer.  *Id*.  Plaintiff claims Maryann Schaublin then conferred with Sherry Camper and decided to bar Plaintiff from using the computer, despite his eyesight disability.  *Id*.

Plaintiff also alleges, without explanation, that Maryann Schaublin and Angela Sherman wrote false conduct reports against him.  *Id*.  It appears the conduct reports resulted in Plaintiff being sent to segregation.  *See id*.  Plaintiff indicates that Major Bishop first advised Maryann Schaublin and Angela Sherman to write the conduct reports, then concluded they were not authorized to do so because they were not employees of the ODRC.  *Id*. at PageID #: 66.  Consequently, Major Bishop ordered that Plaintiff be released from segregation.  *Id*.  Plaintiff contends that upon learning of Plaintiff's release, Ray Schaublin ordered Plaintiff to be returned to segregation.  *Id.*  Additionally, Plaintiff argues, Ray Schaublin authorized the conduct reports written by his wife, Maryann Schaublin.  *Id*.  During the time he was in segregation, Plaintiff's academic appeal did not proceed and he was expelled from the SCC program.  *Id*. at PageID #: 65.

(4:16CV01074)

Plaintiff alleges that Ray Schaublin "forced or bullied" the Administrative Assistant, Cori Smith, to order a rehearing on the conduct reports against Plaintiff. ECF No. 1 at PageID #: 66. The Rules Infraction Board ("RIB") conducted a hearing and found Plaintiff guilty of the charges. *Id.* Plaintiff asserts that the guilty verdict resulted from (1) Ray Schaublin "bullying the RIB Chairman;" (2) Plaintiff being denied staff assistance at the RIB hearings, despite his vision problems; and (3) Marge Jenkins's "rehearsed testimony, which she read from [Maryann Schaublin's] false conduct report." *Id.* at PageID #: 66-67. Plaintiff also alleges that the conduct reports against him had expired by the time of the RIB hearing, according to DRC's policies. *Id.* at PageID #: 67. Ultimately, the RIB sentenced Plaintiff to "[d]isciplinary control, [l]ocal control, and a [d]isciplinary transfer." *Id.* According to Plaintiff, the Unit Management Administrator (a non-party) refused to transfer him because he did not find that Plaintiff was a "threat of bodily harm." *Id.* Plaintiff claims his appeal of the RIB's decision was "vexatiously denied." *Id.*

Plaintiff asserts, summarily, that Defendants violated his First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights, and the Americans with Disabilities Act, 42 U.S.C. § 12101. *Id.* He seeks monetary relief, expungement of his prison disciplinary record, and reinstatement into SCC. *Id.* at PageID #: 68.

## II. Standard for Dismissal

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon

3

(4:16CV01074)

which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Lawler v. Marshall,* 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir. 1996). An action has no arguable basis in law when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez,* 504 U.S. 25, 32 (1992); *Lawler,* 898 F.2d at 1199.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough fact to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986).

The Supreme Court has explained, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

4

(4:16CV01074)

sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. Law and Analysis

#### A. First, Fourth, Fifth, Sixth Amendment and ADA Claims

As an initial matter, Plaintiff does not explain how Defendants violated his First, Fourth, Fifth, or Sixth Amendment rights, or the Americans with Disabilities Act ("ADA").[1] Claims stated solely as legal conclusions are not sufficient to present a valid claim. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) ("[W]e need not accept as true legal conclusions or unwarranted factual inferences."); *see also Place v. Shepherd*, 446 F.2d 1239, 1244 (6th Cir. 1971) ("A pleading will not be sufficient to state a cause of action under the Civil Rights Act if its allegations are but conclusions."). Therefore, these claims are dismissed.

#### B. Eighth Amendment Claim

Plaintiff also fails to state a claim for relief under the Eighth Amendment. The Eighth Amendment places a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment imposed by states may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346

---

[1] As explained below, while Plaintiff claims he required staff assistance at the RIB hearing due to his eyesight limitations, *see* ECF No. 1 at PageID #: 67, he does not show an entitlement to such assistance. Moreover, Plaintiff does not allege a pattern of failure to provide accommodations for his alleged disability. "Allegations of isolated instances of failing to accommodate a disabled prisoner's condition do not state a claim under the ADA." *McCord v. Ohio Dep't. of Rehabilitation and Correction*, No. 1:10CV2355, 2011 WL 768079, at *2 (N.D. Ohio, Feb. 28, 2011).

(4:16CV01074)

(1981).  The Eighth Amendment protects inmates by requiring that "prison officials ... ensure that inmates receive adequate food, clothing, shelter, and medical care, and ... 'take reasonable measures to guarantee the safety of the inmates.'"  *Id*. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  However, it does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration.  *See Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  Prisoners are not entitled to unfettered access to the medical treatment of their choice, *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor can they "expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988); *see Thaddeus-X v. Blatter*, 175 F.3d 378, 405 (6th Cir. 1999).  In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute health threats, but does address those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance.  *Hudson*, 503 U.S. at 9 (requiring extreme or grave deprivation to make out a conditions-of-confinement claim).

The Supreme Court has set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment.  *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred.  *Id*.  Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1,8 (1992).  Routine discomforts of prison life do not suffice.  *Id.*  Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions

6

(4:16CV01074)

of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. A plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff's Complaint does not suggest he was exposed to conditions of confinement that were objectively serious threats to his health or physical safety. He contends he was wrongfully accused of unspecified conduct, and was expelled from the community college program due to academic performance. *See* ECF No. 1. While those conditions may be frustrating or annoying, they do not constitute serious threats to his well-being. Therefore, his claim under the Eighth Amendment is dismissed.

### C. Fourteenth Amendment Claim

Plaintiff also asserts he was denied due process under the Fourteenth Amendment. The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). However, it "does not prohibit every deprivation by the state of an individual's life, liberty or property." *Harris v. City of Akron*, 20

7

(4:16CV01074)

F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id.*

### i. Due Process

The Due Process Clause has a procedural component and a substantive one.  The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power.  A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest.  It simply requires that the government provide due process before making such a decision to minimize the risk of erroneous deprivation, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process.  *Howard v. Grinage*, 82 F.3d 1343, 1349 -1353 (6th Cir. 1996).  Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right.

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used.  See *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (internal citation and quotations omitted).  It serves as a check on legislation that infringes on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct that infringes on a "fundamental right;" or as a limitation on official misconduct that does not infringe on a

(4:16CV01074)

fundamental right but is "so literally 'shocking to the conscience'" as to rise to the level of a constitutional violation.  *Howard*,  82 F.3d at 1349.

### (a).  Procedural Due Process

Plaintiff fails to state a claim for denial of procedural due process.  He claims he received disciplinary sanctions without due process.  *See* ECF No. 1.  Prisoners have narrower liberty and property interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (internal citation and quotations omitted).  The question of what process is due is answered only if the inmate establishes a deprivation of a constitutionally protected liberty or property interest. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

The Due Process Clause, standing alone, confers no liberty or property interest in freedom from government action taken within the sentence imposed.  *Sandin*, 515 U.S. at 480. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."  *Id*. at 485.  "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."  *Wilkinson*, 545 U.S. at 221.  Generally, unless the disciplinary action is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no liberty or property interest will be found in the case.  *Sandin*, 515 U.S. at 484.

(4:16CV01074)

Even when a liberty interest is impacted, the Court's ability to review prison disciplinary proceedings is limited. District courts have no authority to review a disciplinary committee's resolution of factual disputes, or to make a redetermination of an inmate's innocence or guilt. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). The only question for the Court to determine is whether the hearing complied with the basic requirements needed to satisfy due process. The standard is not a difficult one to meet. To comply with the requirements of the Due Process Clause, prison officials need only provide a prisoner facing loss of good time credits or significant time in segregation with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1972). Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. *Id.* at 569-70.

Furthermore, due process requires only that disciplinary findings be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole*, 472 U.S. at 454-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* The Rules Infraction Board ("RIB") is not required to base findings on overwhelming or irrefutable proof of guilt. Even where the evidence is contradictory or partially exculpatory, the RIB may base a finding of guilt on "some evidence" that indicates the prisoner is guilty. *Id.* at 457.

(4:16CV01074)

Plaintiff does not provide much information in his Complaint about the disciplinary hearings. He contends the allegations in the conduct reports were false, but he does not say what the charges were. False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are adjudicated in a hearing that satisfies due process requirements. *See* Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir.1986); *see also* Jackson v. Madery, Nos. 04-1805, 04-1871, 2005 WL 3077136 (6th Cir. May 30, 2006); Jackson v. Hamlin, No. 02-2040, 2003 WL 1194246, at *2 (6th Cir. Mar. 11, 2003); Munson v. Burson, No. 98-2075, 2000 WL 377038 at *3 (6th Cir. April 7, 2000). Additionally, Plaintiff contends that he "needed staff assistance" at the RIB hearing because of his eyesight problems, but he does not assert that he was *entitled* to staff assistance. *See* ECF No. 1 at PageID #: 67. Plaintiff's claim is also belied by the lack of indication that he requested staff assistance while working on his academic appeal.

While Plaintiff states that the RIB ordered a disciplinary transfer against him, he does not elaborate on the sanction imposed on him. *See* ECF No. 1 at PageID #: 67. It also appears the transfer did not take effect. *See id*. Regardless, prisoners do not have a liberty interest in being incarcerated in a particular prison or to be held under a specific security classification. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Cash v. Reno*, No. 97-5220, 1997 WL 809982 (6th Cir. Dec. 23, 1997).

Plaintiff does not allege any facts suggesting that a liberty interest was at stake, or that the hearing he received did not comport with the requirements of due process.

(4:16CV01074)

### (b).  Substantive Due Process

The substantive due process claim Plaintiff may be attempting to assert is also subject to dismissal.  Due process claims of this nature involve official acts which cause a deprivation of a substantive fundamental right.  *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993).  In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience."  *See United States v. Salerno*, 481 U.S. 739, 746 (1987).  These actions are unconstitutional regardless of the procedural protections provided.  *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989).  A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agent.  *Id.* at 833.  The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights."  *Id.*

The Complaint does not suggest prison officials interfered with a fundamental right.  Moreover, none of the allegations in the Complaint describe conduct that shocks the conscience.  Plaintiff has not stated a claim for denial of substantive due process.

### ii.  Equal Protection

Finally, Plaintiff fails to state a claim for denial of equal protection.  The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 -682 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d

(4:16CV01074)

291, 312 (6th Cir. 2005).  The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).  When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.

In this case, Plaintiff has not alleged facts to suggest he received disparate treatment.  He alleges he was expelled from the program due to issues with his grades.  He was not permitted to use the school computers after he was expelled and received a conduct report.  While he contends he was treated unfairly, he has not alleged he was treated differently from others in his same situation.  He has not stated a claim for denial of equal protection.

## IV.  Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

| | |
|---|---|
| July 29, 2016 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |